IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ABBY HARTMAN,<br><br>        Plaintiff,<br><br>vs.<br><br>CITY OF LINCOLN, NEBRASKA,<br><br>        Defendant. | 4:19CV3100<br><br>**MEMORANDUM AND ORDER** |

    Currently pending before the court is Plaintiff's Motion to Compel three categories of evidence: 1) custom and practice evidence regarding sexual misconduct (Interrogatories 7 and 8, Requests for Production Nos. 37, 39, 40); 2) custom and practice evidence regarding officer use/misuse of the CJIS database (Requests for Production Nos. 53-55); and 3) the defendant's designation of a person to testify as to topics 4 through 7 of the amended 30(b)(6) deposition notice. (Filing No. 95). For the reasons stated below, the motion will be granted in part and denied in part. Plaintiff's motion to restrict the reply brief as to the motion to compel will be granted. (Filing No. 100).

BACKGROUND

    Plaintiff's Second Amended Complaint alleges a claim for common law negligence, and multiple claims under 42 U.S.C. § 1983 for violations of her Fourth Amendment, equal protection, and due process rights. She also alleges she was subjected to excessive force. Specifically, Plaintiff alleges that male officers of the Lincoln Police Department (LPD) physically and sexually assaulted her and wrongfully obtained her confidential information so they could coerce and threaten her into compliance. She alleges Defendants were negligent and/or maintained a

policy, custom, and/or practice or were deliberately indifferent in how they supervised employees and responded to allegations of abuse. Plaintiff alleges she is a vulnerable female adult who suffers from chronic mental illness, and the officers threatened to charge her with a crime or place her in emergency protective custody if she did not submit to their demands. (Filing No. 9). She has moved to compel certain discovery, as set forth in further detail below.

## LEGAL STANDARD

The scope of discovery in a civil case is governed by Federal Rule of Civil Procedure 26, as amended December 1, 2015. Rule 26(b)(1) provides that:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). The 2015 Amendment to Rule 26 "restor[ed] proportionality as an express component of the scope of discovery[.]" Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. But, while Rule 26 was amended to include the word "proportional," the concept of proportionality existed under the prior Rule. See Fed. R. Civ. P. 26(b)(1) advisory committee's notes to 2015 amendment ("restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality"). Put differently, the duty of the court to evaluate both the relevancy and proportionality of all discovery remained constant – both before and after 2015.

With that in mind, the court must still satisfy itself that the requesting party has made an initial, threshold showing that the information sought is relevant, prior to turning to the proportionality inquiry. Humphreys & Partners Architects, LP v. Com. Inv. Properties, Inc., 2020 WL 3971604, at *2 (D. Neb. July 14, 2020) (citing Hofer v. Mack Trucks, Inc., 981 F.2d 377, 380 (8th Cir. 1992)).

"[T]he standard of relevance in the context of discovery is broader than in the context of admissibility." Hofer, 981 F.2d 377, 380 (8th Cir. 1992). "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case...[.]" Marquis ProCap Sys., LLC v. Novozymes N. Am., Inc., 2021 WL 119570, at *3 (D. Neb. Jan. 13, 2021) (citation omitted and emphasis added). But, even if the requesting party meets the low threshold for demonstrating relevancy, the court will then consider whether the discovery is proportional to the needs of the case.

Rule 26(b)(1) does not give any party "the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case." Sentis Grp., Inc. v. Shell Oil Co., 763 F.3d 919, 925 (8th Cir. 2014). Instead, the court and the parties must jointly consider the proportionality of the requests at issue: the burden is not rigidly placed on either litigant. As explained by the 2015 Advisory Committee:

> A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

Fed. R. Civ. P. 26 (advisory committee's notes to 2015 amendment). In the end, it is the collective responsibility of the parties and the court to consider the proportionality of all discovery requests. Id.

The court can limit the extent of discovery if it determines the discovery is unreasonably cumulative or duplicative, could be obtained from a more convenient source, or the expense or burden of obtaining the requested discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(2)(C)(i); see also Misc. Docket Matter No. 1 v. Misc. Docket Matter No. 2, 197 F. 3d 922, 925 (8th Cir. 1999) ("discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information"). In determining whether to limit discovery, the court should consider and weigh the factors outlined in Rule 26(b)(1): the resources of the parties, their relative access to the disputed discovery, the amount in controversy in the lawsuit, the likely benefit and/or importance of the information to resolving the parties' dispute, and the general importance of the issues at stake in the litigation. Fed. R. Civ. P. 26(b)(1).

## ANALYSIS

I.   Custom and Practice Evidence Regarding Alleged Sexual Misconduct

Plaintiff has requested the identification and production of all non-privileged documents, recordings, and communications relating to the complaint(s) she made regarding the conduct of LPD officers toward her, and the identification and production of documents, recordings, and communications of others alleging LPD officers engaged in inappropriate sexual conduct or quid pro quo conduct for the years 2000 to 2017. (Interrogatories 7 and 8, Responses to Requests for

Production Nos. 37, 39, 40). Defendant has objected to several aspects of Plaintiff's requests.

A. Years of Discovery to be produced

In the discovery served, Plaintiff requested information for the period between 2000 and 2017. Specifically related to discovery of the Internal Affairs (IA) investigations, the undersigned magistrate judge found that 10 years was appropriate as to IA investigations of sexual assault and sexually related conduct only. (Filing No. 55, Audio file at 57:00). In June 2021, Plaintiff requested five years of IA and disciplinary files and Defendant performed a corresponding search of five years of IA files. (Filing No. 97-8; Filing No. 88-1). Plaintiff then requested that Defendant produce 10 years of discovery in July 2021.

In support of her motion to compel, Plaintiff argues that a twenty-year period for discovery of alleged sexual misconduct, misuse of the LPD databases and non-compliance with LPD policies and state law should control in this matter. Plaintiff asserts McGuire v. Cooper, 8:16-cv-4, Filing No. 127 (D. Neb. Aug. 18, 2018), holds that "a twenty-year period for prior acts of misconduct is appropriate" for proving the existence of a custom and practice. She argues that it is prejudicial to to limit Plaintiff to five years of prior bad conduct in this case. (Filing No. 89 at CM/ECF p. 7). In McGuire, the district court found that fifteen instances of sexual misconduct over a twenty-year period prior to the assault on McGuire created a genuine issue of material fact concerning the municipality's unofficial custom or failure to train or supervise its employees on sexual misconduct. However, as discussed more fully below, this decision was reversed by the Eighth Circuit on interlocutory appeal. McGuire v. Cooper, 952 F.3d 918, 922–23 (8th Cir. 2020).[1]

---

[1] Plaintiff's counsel is reminded to assure that cases cited in her briefing and argued to this court have not been reversed by a higher court.

Although Plaintiff argues that 20 years of evidence is relevant, her briefing indicates she is requesting only ten years. (Filing No. 101 at CM/ECF p. 3). As stated above, the undersigned previously discussed the relevance of IA reports going back ten years from the incidents involving Plaintiff. The correspondence between the parties also memorializes the agreement to produce ten years of IA records and the disciplinary files related to this case. (Filing No. 88-10 at CM/ECF p. 2). At this time, the court declines to extend the search further than ten years and Defendant is ordered to expand the scope of its search to include IA files between 2007 and 2012, in conformance with the discussion below.

B. Inadequate Search Terms

Plaintiff asserts that in searching the IA files for discoverable documents, the "City used the single search term of 'sex' " which is inadequate because it would not capture conduct such as inappropriate language or touching or groping that didn't involve sex and wouldn't have captured quid pro quo conduct." (Filing No. 89 at CM/ECF p. 6). Plaintiff argues that it would not be unduly burdensome for the City to conduct a hand review of all IA reports for the 2007-2017 time frame. (Filing No. 89 at CM/ECF p. 7).

Defendants have submitted the declaration of the Internal Affairs Sergeant who performed the search. She states:

> In order to find relevant IA investigations, I reviewed the quarterly reports of the Citizens Police Advisory Board that contain general summaries of IA investigations to find any that described investigations of alleged sexual misconduct for LPD commissioned officers. The summaries do not state the names of the officer or the complainant. I also reviewed the IA permanent written log. Any investigative reports that appeared to have a sexual component were

6

    added to a memorandum I created. I also had a keyword search run in the electronic ALPHA system of discipline using the word "sex" to ensure there were not any investigations missing that should be added. The keyword search did not yield any investigations during the requested timeframe that were not already listed in the memorandum. An electronic keyword search for the word "sex" was not the only way the investigations on the memorandum were located.

([Filing No. 97-2 at CM/ECF p. 3](#)).

    Plaintiff asserts the City's search was inadequate because it uncovered only 12 incidents. Given the IA sergeant's declaration that she reviewed the quarterly reports and cross-referenced with search terms, there is no reason to believe that additional incidents exist or that the search was too narrow. The court cannot compel Defendant to produce additional evidence for the years 2012-2017 when there is no indication that such evidence exists. However, as previously discussed, the City will be directed to produce 10 years of relevant IA files. Defendant is directed that IA should perform a search of IA files for the years 2007-2012 using the criteria and methods outlined in Sergeant Jochum's declaration and shall supplement its responses to Interrogatories 7 and 8 and Request for Production No. 39, accordingly. Defendant shall provide a summary of the search results, as well as the written Internal Affairs Investigative Report for those incidents that appeared to have a sexual component.

    Plaintiff requests all documents and files related to the IA investigations of reports or complaints made that an LPD officer engaged in sexually inappropriate conduct. Defendant requests that for the IA files identified, the production be limited to the written Internal Affairs Investigative Report. The final report prepared by the IA Sergeant at the conclusion of the investigation summarizes the police report involved, the complaint, the steps taken in the investigation, and the conclusion based on the results of the investigation. (Filing No. 97-2 at CM/ECF

7

pp. 1-2). This information is sufficient for Plaintiff to assess the circumstances of the case and how the issues were resolved by the City for the purposes of making a custom, practice, and policy argument. Producing the entire investigative file, including recordings, media files, and notes, is not proportional to the needs of this case and no further response to Request for Production Nos. 37 or 40 is necessary.

### C. Files Withheld

The final memorandum prepared by the Internal Affairs Sergeant contained a list of twelve investigations for LPD officers over a five-year time period. The majority of the findings were "exonerated" or "not sustained." (Filing No. 88-1). Three of the twelve involved the allegations in this lawsuit, and those files have been produced. (Investigations 10, 11, and 12, Filing No. 88-1). Two of the twelve investigations were "sustained." Plaintiff asserts she is entitled to review each of the investigative files on the memorandum and any disciplinary files related thereto.

#### 1. "Sustained" Investigations

The two files listed as "sustained," identified as files 12-11-02 and 14-03-02, have not been produced as they both involved separate, consensual sexual relationships. (Investigations 1 and 3 on Filing No. 88-1). One report involved a male officer and a female LPD employment applicant and the other involved a male sergeant and a female officer. In both cases, the male officers resigned and the females stated during the investigation that the sexual relations were consensual. (Filing No. 97-2 at CM/ECF p. 2; Filing No. 97-5).

Plaintiff alleges the City "does not have a unilateral right to determine what is consensual and what isn't." (Filing No. 89 at CM/ECF p. 6). Plaintiff argues that Defendant's ability to "accurately assess whether a relationship is consensual" is questionable given the Defendant's position that at least some of Plaintiff's interaction with the LPD officers was consensual.[2] (Filing No. 101 at CM/ECF p. 2). Therefore, Plaintiff believes Defendant should be compelled to submit the two "sustained" IA files for Plaintiff's review.

In response to the motion to compel, Defendant asserts that the dissimilarity between the relationships shows there is no continuous, widespread, persistent pattern of misconduct or custom, and that the dissimilarity between Plaintiff's complaint and other IA reports is a reason not to produce certain reports. Defendant argues that "Consensual sexual relationships between LPD employees and/or applicants bear absolutely no relevance to Plaintiff's allegations that LPD officers allegedly coerced or sexually assaulted her, a member of the public, during the course of their employment." (Filing No. 98 at CM/ECF p. 8). Defendant argues these documents could be used as inflammatory evidence of alleged LPD misconduct, even though the behavior involved is dissimilar to the allegations here. Further, the City argues the files would be unfairly prejudicial, potentially embarrassing to those involved, and the production would discourage future disclosures of "consensual but perhaps improper" relationships between or involving LPD officers. (Id.) Ultimately, Defendant argues that the burden of production would not be proportional to the needs of this case.

---

[2] Defendant states that documentary and testimonial evidence provided in discovery shows a consensual, ongoing sexual relationship between Plaintiff and Joseph Keiser, and a one-time sexual encounter between Plaintiff and Jared Grayson. Defendant asserts that those circumstances form the basis for the affirmative defense of acquiescence. The City does not dispute that the sexual assault by Officer Gregory Cody was nonconsensual. Officer Cody has been convicted of first-degree sexual assault of Plaintiff and was sentenced to a term of imprisonment. See State v. Cody, No. A-19-852, 2021 WL 96665, at *1 (Neb. Ct. App. Jan. 12, 2021), review denied (Mar. 11, 2021).

Plaintiff's argument that "the word of defense counsel is insufficient to deny Plaintiff's request for discoverable information" is misguided. (Filing No. 101 at CM/ECF p. 2). Upon my review, neither of the withheld investigations includes a determination by Defendant or by defense counsel that the sexual encounters were consensual; that conclusion was reached during the course of the IA investigations unrelated to this lawsuit. More importantly, in McGuire v. Cooper, 952 F.3d 922-23 (8th Cir. 2020), the Eighth Circuit reversed the district court, holding prior instances of sexual misconduct which are not similar in kind or sufficiently egregious in nature are not relevant when determining whether there was a pattern of sexual assault against members of the public by law enforcement. "In order to establish a pattern, our case law requires a showing of more than general allegations of a wide variety of sexual misconduct. It requires the other misconduct to be very similar to the conduct giving rise to liability." Id. (citing Livers v. Schenck, 700 F.3d 340, 356 (8th Cir. 2012)).

The consensual relationships described in the two internal affairs files identified as 12-11-02 and 14-03-02 in the IA memorandum are clearly dissimilar to this case. Using the Eighth Circuit's reasoning, these files are not relevant or proportional to the needs of this case, and production will not be compelled. Moreover, the court is not inclined to disregard the privacy interests of third parties—here, the interests of adults engaged in a sexual relationship—when deciding whether the plaintiff is entitled to discover the details of those encounters and how they arose.

2. "Exonerated" or "Not Sustained" Investigations

Plaintiff's brief also asserts the City has not produced files for the nine incidents identified in Exhibit 1 which do not involve the plaintiff (Investigations 1-9, Filing No. 88-2) and "it has completely failed to produce the disciplinary hearings

10

and related documents for ALL incidents listed in Exhibit 1." (Filing No. 89 at CM/ECF p. 6). Defendant states that the City has already produced the personnel and disciplinary files of the three former LPD officers accused in the lawsuit.[3] (Filing No. 97-1 at CM/ECF p. 5). Additionally, the City explains that investigations that are "exonerated" or "not sustained" do not result in discipline. So, there are no disciplinary hearings or related documents to produce related to those investigations.

In response to the motion to compel, Defendant asserts the "Exonerated" and "Not Sustained" nonconsensual cases listed in the memorandum "pertain to alleged conduct during one-time arrests, traffic stops, or searches" and do not involve coerced sexual acts in exchange for not being arrested or placed in EPC, therefore the files are irrelevant. A review of the IA memorandum produced shows that the investigative files marked as exonerated or not sustained bear no reasonable resemblance to the allegations in this case. Thus, the court will not compel their production.

II. Custom and Practice Evidence Regarding CJIS Database Access

Plaintiff has requested the documents, recordings, and communications related to all instances when LPD employee(s) were accused of or investigated for misuse of the CJIS system and all investigations, hearings, and discipline that resulted therefrom. (Requests for Production No. 53-55). Plaintiff argues that the officers used the CJIS databases to track her and gain information about her to convince her to "submit to their sexual requests and not report the sexual assaults." (Filing No. 101 at CM/ECF p. 3). Plaintiff argues that had LPD monitored the use

---

[3] The disciplinary files related to the three officers accused in this case are clearly relevant, and to the extent that the files have not been produced, they should be produced without delay.

11

of the databases, the alleged misconduct would have been discovered and the officers' conduct toward her could have been avoided.

Plaintiff is already in possession of the access information showing how often officers Keiser, Grayson, and Cody used the databases to look up Plaintiff's information, and she has the disciplinary and internal affairs files related to those officers. The plaintiff is free to inquire as to what the practices and procedures are for monitoring the CJIS databases, how often monitoring was carried out in conformance with any such policies, and whether there were instances of other individuals disciplined for misuse of the databases. But this can be reasonably performed through an interrogatory. A full ESI search and production of all documents and files on this subject for a ten-year period is unnecessary and disproportionate to the needs of this case. It will not be compelled and no further response to Request for Production Nos. 53, 54, or 55 is necessary.

### III. 30(b)(6) Designations

On June 11, 2021, Plaintiff filed a 30(b)(6) notice. ([Filing No. 73](#)). Defendant City objected to Topics 1, 2, and 4 through 7, stating that each of the topics called for a legal conclusion, therefore it would be inappropriate to have a lay individual testify as to those topics. Defendant produced a table indicating its specific objection to each topic, stating Topics 1 and 2 relate to qualified immunity, Topic 4 calls for a legal conclusion regarding immunity under the Political Subdivisions Tort Claims Act, Topic 5 calls for a legal conclusion regarding standing, Topic 6 calls for a legal conclusion regarding damages, and Topic 7 calls for a legal conclusion regarding waiver and estoppel. ([Filing No. 88-2](#)) Plaintiff has moved to compel Defendant to produce designees for deposition topics 4 through 7. ([Filing No. 95](#)).

Rule 30(b)(6) provides that an organization must "designate one or more officers, directors, or managing agents" to testify on its behalf "about information known or reasonably available to the organization." The testimony of a Rule 30(b)(6) witness "represents the collective knowledge of the corporation, not of the specific individual deponents." Waste Connections, Inc. v. Appleton Elec., LLC, No. 8:12CV436, 2014 WL 1281918, at *3 (D. Neb. Mar. 27, 2014) (quoting QBE Ins. Corp. v. Jorda Enter., Inc., 277 F.R.D. 676, 688 (S.D. Fla. 2012) ).

"[D]epositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories, which, to the extent discoverable at all prior to trial, must be discovered by other means." United States v. Stabl Inc., No. 8:16CV233, 2018 WL 3758204, at *7 (D. Neb. Aug. 8, 2018), citing U.S. ex rel. Baklid-Kunz v. Halifax Hosp. Med. Ctr., No. 6:09-CV-1002-ORL-31, 2012 WL 3537070, at *4 (M.D. Fla. Aug. 14, 2012)(citing JPMorgan Chase Bank v. Liberty Mutual Ins. Co., 209 F.R.D. 361, 362 (S.D.N.Y. 2002)). Plaintiff is directed to limit her topics of inquiry to *facts* relevant to this case. She is prohibited from inquiring into how those facts may support a legal conclusion advocated by defense counsel. To rule otherwise would permit the plaintiff, by means of a 30(b)(6) deposition, to uncover defense counsel's mental impressions of how to marshal the facts to defend the case, disclosure of which would violate the work product doctrine and attorney-client privilege.

IT IS ORDERED:

1) Plaintiff's Motion to Compel (Filing No. 95) is granted in part and denied in part, as outlined in this order.

2) On or before September 14, 2021 Defendant City of Lincoln shall supplement its responses and make a supplemental production of

documents consistent with this order. The parties are instructed to work in good faith to attempt to resolve any ancillary disputes that may arise surrounding this additional discovery.

3) Plaintiff must limit the scope of 30(b)(6) deposition topics in accordance with the Court's direction, above.

4) If a dispute regarding the application and compliance with this order arises, on or before September 14, 2021, the parties shall contact the court, at zwart@ned.uscourts.gov, for a discovery dispute conference prior to any additional discovery motion related to the issues addressed and resolved herein.

5) Plaintiff's motion to restrict her reply brief is granted. (Filing No. 100).

Dated this 26th day of August, 2021.

BY THE COURT:

*s/ Cheryl R. Zwart*
United States Magistrate Judge